# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**MARK. A. HINSON,**
**Claimant Below, Petitioner**

**FILED**

December 7, 2017
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 16-0787** (BOR Appeal No. 2051276)
                        (Claim No. 2014004605)

**CHICAGO BRIDGE & IRON COMPANY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mark A. Hinson, pro se, appeals the decision of the West Virginia Workers' Compensation Board of Review. Chicago Bridge & Iron Company, by Maureen Kowalski, its attorney, filed a timely response.

The issue on appeal is the compensability of the claim. The claims administrator rejected the claim on October 9, 2014. By its Order dated April 6, 2016, the Office of Judges affirmed the claims administrator's decision. The Board of Review affirmed the Office of Judges' Order on July 15, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is based upon a material misstatement or mischaracterization of the evidentiary record. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

Mark A. Hinson, a pipefitter, alleged he was injured on March 7, 2013, while changing gaskets on flanges which required the removal of nuts with a thirty-two inch, fifteen pound wrench. He initially thought he was having a heart attack due to the pain in his chest, left arm, and neck. Mr. Hinson told his foreman about the pain, and his foreman took him to the safety office. In the safety office, Mr. Hinson spoke to the safety supervisor and the nurse. He rested in the safety office for about a half an hour, and then went to the hospital. A chest x-ray, laboratory results, and EKG results all appeared normal.

On March 19, 2013, Mr. Hinson presented to New Martinsville Rural Health Clinic for a follow-up to his emergency room visit. Mr. Hinson complained of pain in his left shoulder which

was constant but worsened with movement. He complained of numbness in his entire left arm and the tip of his thumb but stated that his hand was not numb. Mr. Hinson reported left-sided neck pain and that the left arm felt weak due to pain. The assessment was left shoulder pain. Mr. Hinson was given a note for work through April 9, 2013, that stated he could not climb ladders or push, pull, or reach above his head with his left upper extremity. X-rays taken the next day indicated that there were degenerative changes in the cervical spine. No fractures of the left shoulder were identified.

On April 3, 2013, Mr. Hinson underwent an MRI of his left shoulder which showed no rotator cuff tear. There was evidence of subacromial/subdeltoid bursitis and mild degenerative disease of the acromioclavicular joint. An MRI of the cervical spine showed a naturally small spinal canal with superimposed degenerative changes including subluxations and disc herniations resulting in mild to moderate spinal stenosis. There was fairly extensive foraminal stenosis from C4-T1. On October 8, 2014, an arthrogram and MRI of the left shoulder were performed. A superior labral tear from anterior to posterior and significant articular set rotator cuff tear were demonstrated.

On October 9, 2014, the claims administrator rejected Mr. Hinson's claim because he did not report the injury timely to his employer and because there was no evidence to support his allegation that he sustained an injury in the course of and resulting from his employment. Mr. Hinson protested the denial of the claim.

Mr. Hinson testified in a deposition on February 2, 2015, that he injured himself in the course of his employment on March 7, 2013. His foreman, John Katherman, was present and took him to the safety office. Danny Fields, the safety man, was in the safety office, along with Nurse Hatchett. Mr. Hinson testified that he went to his hotel room to change out of muddy clothes before going to the hospital. When he arrived, no one from his office was there. Mr. Hinson used his wife's insurance because he did not know what else to do. Mr. Hinson testified that he was placed on light duty and continued to work for the employer for three to four weeks before being laid off. Mr. Hinson stated that the employer would let him off work to go to his doctor's appointments. Mr. Hinson testified that each time he went to the doctor; he gave the records to Mr. Fields or Nurse Hatchett. Mr. Hinson testified that he spoke to a representative at the employer's insurance company and she stated that she would take care of the doctor's bills. Mr. Hinson stated she has done nothing. Mr. Hinson also tried to get in touch with attorneys but was never able to reach them. Mr. Hinson believed that he had done everything he was supposed to do under the circumstances.

On February 15, 2015, Dwight Abshire, the Oil and Gas and Safety Director for the employer, executed an affidavit that stated Mr. Hinson did not report any accident or relate any complaints of pain for any work-related incident on March 7, 2013. The protocol is for an injured worker to report the accident immediately and to seek medical treatment. Someone from the company is required to accompany the injured worker to a physician's office. Mr. Hinson was aware of these procedures as he has attended orientation and safety meetings. Mr. Hinson should have reported the injury to a supervisor, who would initiate a report and write a statement to the Safety Department where all accidents are reported. The first knowledge that the employer had

of the alleged work-related incident was in October of 2013, more than six months after the alleged incident, when a medical bill was received.

On April 1, 2015, Paul Bachwitt, M.D. performed an independent medical evaluation. He opined that it was more likely than not that Mr. Hinson tore his left rotator cuff at work on March 7, 2013, and sustained a cervical spine sprain/strain. Dr. Bachwitt noted some of the tools Mr. Hinson worked with were quite large and that Mr. Hinson's foreman, Mr. Katherman, and welder, Brian Patrick, could verify that Mr. Hinson was injured at work while using a wrench. Dr. Bachwitt also reported that Mr. Hinson could have continued working after suffering a torn rotator cuff as not all rotator cuffs tears are complete tears, but still need to be repaired. Individuals who sustain a rotator cuff tear usually do not have a full recovery, but with the best of treatment, physical therapy, and home exercises, Dr. Bachwitt expected Mr. Hinson to make a good recovery. He opined that Mr. Hinson had not yet reached maximum medical improvement from the injury of March 7, 2013, and would not until he undergoes additional physical therapy for the limitation of motion in his left shoulder and sees the neurosurgeon to determine whether cervical injections or a laminectomy is recommended.

Thomas Muzzonigro, M.D., performed a medical records review on May 28, 2015, and opined that Mr. Hinson had significant pre-existing conditions that included multilevel degenerative changes in the neck, mid back, and low back with stenosis of the cervical spine and prior injuries to his neck, shoulder, back, and chest. All were unrelated to the March 7, 2013, incident. Dr. Muzzonigro opined that if Mr. Hinson were an accurate historian, he may have sustained a mild cervical and left shoulder strain at work on March 7, 2013. At the time of the incident, x-rays showed only degenerative changes. An MRI of the cervical spine also showed no evidence of injury, but there was evidence of degenerative changes and stenosis. Dr. Muzzonigro did not believe the medical records showed an aggravation of a pre-existing condition. Nor did he believe that Mr. Hinson sustained a rotator cuff tear in the course of and resulting from his employment.

On April 6, 2016, the Office of Judges affirmed the claims administrator's decision rejecting the claim. The Office of Judges began by stating that there is an issue of whether an application was filed within the time limits of West Virginia Code §23-4-15(a) (2010). Under this provision, the application must be filed within six months of the injury. The Office of Judges did not find Mr. Hinson's testimony to be persuasive and found that there was no evidence an application for benefits had been timely filed.

West Virginia Code §23-4-1a (2003) states that every employee who sustains an injury shall immediately, or as soon thereafter as practicable, give the employer written notice of the injury. The Office of Judges determined that there is no evidence that Mr. Hinson provided written notice of any injury in accordance with the statute. The employer stated it first learned of the incident when it received a bill after the six month time frame had expired. The Office of Judges concluded that this was neither timely nor an appropriate form of providing written notice. The Office of Judges did not determine what, if any, injury may have occurred as it was found that Mr. Hinson did not timely file. The Board of Review affirmed the Order of the Office of Judges on July 15, 2016.

3

We find that the findings of fact and conclusions of law reached by the Office of Judges as affirmed by the Board of Review were clearly wrong in light of the evidentiary record. While a completed, written first report of injury may not have been submitted into evidence, it is clear that the employer had notice of a work-related incident on March 7, 2013. Mr. Hinson's testimony is supported by the medical evidence, including the reports of Dr. Bachwitt and Dr. Muzzonigro. Additionally, Mr. Abshire may not have known about the March 7, 2013, incident but at least three employees were aware of the incident and Mr. Hinson's resulting hospital visit. The evidence of record supports a conclusion that Mr. Hinson timely filed his application for benefits.

For the foregoing reasons, we find that the decision of the Board of Review is clearly wrong based upon the evidence of record. Therefore, the decision of the Board of Review is reversed and remanded. The claims administrator is directed to hold the claim compensable for a left rotator cuff tear and cervical sprain/strain and authorize medical treatment for the same.

Reversed and remanded.

**ISSUED: December 7, 2017**

**CONCURRED IN BY:**
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis D. Ketchum

**DISSENT:**
Chief Justice Allen H. Loughry II
Justice Elizabeth D. Walker

LOUGHRY, Chief Justice, dissenting, joined by Justice Walker:

I dissent to the majority's decision to hold this claim compensable. There is no evidence in the record that the March 7, 2013, injury alleged by the claimant actually occurred. More importantly, however, there is no evidence that an application for worker's compensation benefits was filed in a timely manner. West Virginia Code §23-4-15(a)(2010) requires an application for worker's compensation benefits to be filed within "six months from and after the injury". Likewise, West Virginia Code § 23-4-1a (2010) states that an employee who sustains an injury "shall immediately on the occurrence of the injury or soon thereafter as practicable" give written notice to the employer. The evidence in the record indicates that the employer had no notice of the claimant's alleged injury until October 2013, when it received a medical bill for the claimant. Because the claimant failed to provide timely written notice of his alleged injury as required by the statutes discussed above, the decision of the Board of Review rejecting the claim should have been affirmed.
I am authorized to state that Justice Walker joins in this dissent.

4